FILED

2013 MAY -9  PM 3: 36

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2012 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>               v.<br><br>OLUFUNKE IBIYEMI FADOJUTIMI,<br>     aka "Olu,"<br>AYODEJI TEMITAYO FATUNMBI,<br>     aka "Ayo,"<br>     aka "Paul,"<br>     aka "Paul Olawale,"<br>MARITZA ELIZABETH VELAZQUEZ,<br>     aka "Maritza Rodriguez,"<br><br>                    Defendants. | CR No. **C R 1 3 - 0 3 2 4**<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1349: Conspiracy<br>to Commit Health Care Fraud;<br>18 U.S.C. § 1347: Health Care<br>Fraud; 18 U.S.C. § 2(b):<br>Causing an Act to be Done; 18<br>U.S.C. § 1956(h): Laundering<br>of Monetary Instruments] |

The Grand Jury charges:

COUNT ONE

[DEFENDANTS FADOJUTIMI, FATUNMBI, AND VELAZQUEZ]

[18 U.S.C. § 1349]

A.   INTRODUCTORY ALLEGATIONS

    At all times relevant to this Indictment:

//

1    The Conspirators

2        1.   Defendant OLUFUNKE IBIYEMI FADOJUTIMI, also known as

3    ("aka") "Olu" ("defendant FADOJUTIMI"), was a registered nurse

4    who owned and operated a business known as Lutemi Medical

5    Supplies from in or about September 2003, which defendant

6    FADOJUTIMI subsequently incorporated, owned, and operated as

7    Lutemi Medical Supply, Inc. (collectively "Lutemi") starting in

8    or about November 2006.  Lutemi operated as a durable medical

9    equipment ("DME") supply company located at 550 Carson Plaza

10   Drive, Suite 125, Carson, California, within the Central District

11   of California.  Defendant FADOJUTIMI, completed, signed, and

12   submitted applications and other paperwork to the Medicare

13   Program ("Medicare") to obtain and maintain Medicare provider

14   numbers for Lutemi and, at times, completed paperwork used by

15   Lutemi's staff and medical billers to submit claims to Medicare.

16       2.   Defendant AYODEJI TEMITAYO FATUNMBI, aka "Ayo," aka

17   "Paul," aka "Paul Olawale" ("defendant FATUNMBI"), worked at

18   Lutemi and helped defendant FADOJUTIMI manage Lutemi's daily

19   operations.

20       3.   Defendant MARITZA ELIZABETH VELAZQUEZ, aka "Maritza

21   Rodriguez" ("defendant VELAZQUEZ"), was employed at Lutemi as its

22   officer manager starting in or about 2007.  As part of her job

23   duties at Lutemi, defendant VELAZQUEZ billed Lutemi's claims to

24   Medicare.  In addition, in or about December 2008, defendant

25   VELAZQUEZ started and ran "Betty's Billing Service" ("Betty's

26   Billing"), a medical billing business that defendant VELAZQUEZ

27   operated while she worked for Lutemi.  Before defendant VELAZQUEZ

28

1  joined Lutemi, she worked for a medical billing business that

2  submitted claims to Medicare on behalf of Lutemi.

3      4.   A co-conspirator known to the Grand Jury ("CC1") was a

4  licensed doctor who operated a medical clinic.  In exchange for

5  illegal kickbacks paid to CC1 by defendants FADOJUTIMI, FATUNMBI,

6  VELAZQUEZ, and others acting on their behalf, CC1 wrote false and

7  fraudulent prescriptions and documents for power wheelchairs

8  ("PWCs") and other DME which defendants FADOJUTIMI, FATUNMBI,

9  VELAZQUEZ, and others used as a basis to bill Medicare.

10      5.   A co-conspirator known to the Grand Jury ("CC2") was

11  associated with individuals who owned fraudulent medical clinics

12  that generated false and fraudulent prescriptions and documents

13  for PWCs and other DME which defendants FADOJUTIMI, FATUNMBI,

14  VELAZQUEZ, and others known and unknown to the Grand Jury used as

15  a basis to bill Medicare.  CC2 and CC2's associates operated

16  these clinics, and provided and sold the false and fraudulent

17  prescriptions and documents generated at the clinics to the

18  owners and operators of DME supply companies and others.

19      6.   Between in or about April 2004 and in or about May

20  2011, Lutemi submitted to Medicare claims totaling approximately

21  $8,358,501 for PWCs and other DME, and Medicare paid Lutemi

22  approximately $4,372,466 on those claims.

23     The Medicare Program

24      7.   Medicare was a federal health care benefit program,

25  affecting commerce, that provided benefits to individuals who

26  were over the age of 65 or disabled.  Medicare was administered

27  by the Centers for Medicare and Medicaid Services ("CMS"), a

28

1  federal agency under the United States Department of Health and
2  Human Services ("HHS").

3      8.    CMS contracted with private insurance companies to (a)
4  certify DME providers for participation in Medicare and monitor
5  their compliance with Medicare standards; (b) process and pay
6  claims; and (c) perform program safeguard functions, such as
7  identifying and reviewing suspect claims.

8      9.    Individuals who qualified for Medicare benefits were
9  referred to as Medicare beneficiaries.  Each Medicare beneficiary
10  was given a Health Identification Card containing a unique
11  identification number ("HICN").

12      10.    DME companies, physicians, and other health care
13  providers that provided medical services that were reimbursed by
14  Medicare were referred to as Medicare "providers."

15      11.    To obtain payment from Medicare, a DME company first
16  had to apply for and obtain a provider number.  By signing the
17  provider application, the DME company agreed to abide by Medicare
18  rules and regulations, including the Anti-Kickback Statute (42
19  U.S.C. § 1320a-7b(b)), which, among other things, prohibited the
20  payment of kickbacks or bribes for the referral of Medicare
21  beneficiaries for any item or service for which payment may be
22  made by the Medicare program.

23      12.    If Medicare approved a provider's application, Medicare
24  assigned the provider a Medicare provider number, enabling the
25  provider (such as a DME company or physician) to submit claims to
26  Medicare for services and supplies provided to Medicare
27  beneficiaries.

28

13.   To obtain and maintain their Medicare provider numbers and billing privileges, DME providers had to meet Medicare standards for participation.  The Medicare contractor responsible for evaluating and certifying DME providers' compliance with these standards was Palmetto GBA ("Palmetto").

14.   From in or about January 2003 through in or about September 2006, CIGNA processed and paid Medicare DME claims in Southern California.  From in or about October 2006 onward, Noridian Administrative Services ("Noridian") performed this function.

15.   Most Medicare providers, including Lutemi, submitted their claims electronically pursuant to an agreement with Medicare that they would submit claims that were accurate, complete, and truthful, and would retain all original source documents and medical records pertaining to any Medicare claim for a period of six years and three months after the claim was billed to and paid by Medicare.  On more than occasion, defendant FADOJUTIMI executed such electronic billing agreements on behalf of Lutemi.

16.   Medicare paid DME providers only for DME that was medically necessary to the treatment of a beneficiary's illness or injury, was prescribed by a beneficiary's physician, and was provided in accordance with Medicare regulations and guidelines that governed whether a particular item or service would be paid by Medicare.

17.   To bill Medicare for DME provided to a beneficiary, a DME provider was required to submit a claim (Form 1500) to Noridian or CIGNA.  Medicare required claims to be truthful,

1   complete, and not misleading.  In addition, when a claim was

2   submitted, the DME provider was required to certify that the DME

3   or services covered by the claim were medically necessary.

4        18.  Medicare required a claim for payment to set forth,

5   among other things, the beneficiary's name and HICN, the type of

6   DME provided to the beneficiary, the date the DME was provided,

7   and the name and unique physician identification number ("UPIN")

8   of the physician who prescribed or ordered the DME.

9        19.  Medicare had a co-payment requirement for DME.

10  Medicare reimbursed providers 80% of the allowed amount of a DME

11  claim and the beneficiary was ordinarily obligated to pay the

12  remaining 20%.

13  B.   THE OBJECT OF THE CONSPIRACY

14       20.  Beginning in or about September 2003, and continuing

15  through in or about January 2013, in Los Angeles County, within

16  the Central District of California, and elsewhere, defendants

17  FADOJUTIMI, FATUNMBI, and VELAZQUEZ, together with CC1, CC2, and

18  others known and unknown to the Grand Jury, knowingly combined,

19  conspired, and agreed to commit health care fraud, in violation

20  of Title 18, United States Code, Section 1347.

21  C.   THE MANNER AND MEANS OF THE CONSPIRACY

22       21.  The object of the conspiracy was carried out, and to be

23  carried out, in substance, as follows:

24       a.  Defendants FADOJUTIMI, FATUNMBI, VELAZQUEZ, and

25  others known and unknown to the Grand Jury, would use both cash

26  and checks to pay illegal kickbacks to marketers to recruit

27  Medicare beneficiaries for PWCs and other DME for which the

28  beneficiaries did not have a legitimate medical need.  In some

6

1  cases, these beneficiaries lived in cities and towns that were

2  hundreds of miles and several hours away from Lutemi.

3          b.    In order to communicate with Lutemi's marketers,

4  defendants FADOJUTIMI, FATUNMBI, and VELAZQUEZ gave one of

5  Lutemi's employees a cellular telephone for the employee to

6  communicate with the marketers.

7          c.    The employee and defendant VELAZQUEZ would

8  maintain a special ledger in which they recorded, among other

9  things, the names and Medicare numbers of the beneficiaries, and

10  the names of the marketers who recruited them.

11          d.    Defendants FADOJUTIMI, FATUNMBI, VELAZQUEZ, and

12  others acting on their behalf would pay illegal kickbacks to CC1

13  and other doctors and individuals to provide them with false and

14  fraudulent prescriptions and documents that defendants

15  FADOJUTIMI, FATUNMBI, VELAZQUEZ, and others acting on their

16  behalf would use to submit false and fraudulent claims to

17  Medicare for PWCs and other DME.

18          e.    Defendants FADOJUTIMI, FATUNMBI, VELAZQUEZ, and

19  others acting on their behalf would also use false and fraudulent

20  prescriptions and documents generated by the fraudulent medical

21  clinics run by CC2 and CC2's associates to submit false and

22  fraudulent claims to Medicare for PWCs and other DME.

23          f.    Defendants FADOJUTIMI, FATUNMBI, and VELAZQUEZ

24  would obtain cash to pay kickbacks to the marketers, doctors,

25  CC1, CC2, and CC2's associates by writing checks from Lutemi's

26  Wells Fargo Bank corporate accounts to Lutemi's employees; to

27  family members, friends, and co-workers of defendant FADOJUTIMI;

28  and to others known and unknown to the Grand Jury.  Often at

1 | defendant FATUNMBI's direction, these individuals would cash the
2 | checks and return all or almost all of the money to defendants
3 | FADOJUTIMI, FATUNMBI, and VELAZQUEZ, who would then use the money
4 | to pay the illegal kickbacks.

5 |       g.   After acquiring the false and fraudulent
6 | prescriptions and documents, defendants FADOJUTIMI, FATUNMBI, and
7 | VELAZQUEZ would submit, and cause the submission of, false and
8 | fraudulent claims to Medicare for PWCs and other DME provided by
9 | Lutemi to Medicare beneficiaries that was not medically
10 | necessary.

11 |       h.   In many cases, defendants FADOJUTIMI, FATUNMBI,
12 | and VELAZQUEZ would submit claims to Medicare before Lutemi
13 | actually provided or delivered PWCs and other DME to Lutemi's
14 | beneficiaries.

15 |       i.   As a result of defendants FADOJUTIMI, FATUNMBI,
16 | and VELAZQUEZ's submission of false and fraudulent claims at
17 | Lutemi, Medicare made payments to Lutemi's two corporate bank
18 | accounts at Wells Fargo Bank.  Defendant FADOJUTIMI would then
19 | transfer and disburse, and cause the transfer and disbursement
20 | of, monies from Lutemi's corporate bank accounts to herself,
21 | defendants FATUNMBI and VELAZQUEZ, and others.

COUNTS TWO THROUGH EIGHT

[DEFENDANTS FADOJUTIMI, FATUNMBI, AND VELAZQUEZ]

[18 U.S.C. §§ 1347 and 2(b)]

A.    INTRODUCTORY ALLEGATIONS

22.   The Grand Jury incorporates by reference and re-alleges paragraphs 1 through 19 and paragraph 21 above of this Indictment as though set forth in their entirety here.

B.    THE SCHEME TO DEFRAUD

23.   Beginning on or about September 2003, and continuing through on or about January 2013, in Los Angeles County, within the Central District of California, and elsewhere, defendants FADOJUTIMI, FATUNMBI, and VELAZQUEZ, together with others known and unknown to the Grand Jury, knowingly, willfully, and with intent to defraud, executed, and attempted to execute, a scheme and artifice: (a) to defraud a health care benefit program, namely Medicare, as to material matters in connection with the delivery of and payment for health care benefits, items, and services; and (b) to obtain money from Medicare by means of material false and fraudulent pretenses and representations and the concealment of material facts in connection with the delivery of and payment for health care benefits, items, and services.

C.    MEANS TO ACCOMPLISH THE SCHEME TO DEFRAUD

24.   The fraudulent scheme operated, in substance, as described in paragraph 21(a) through (i) above of this Indictment, which are incorporated by reference as though set forth in its entirety here.

//

//

9

D.    EXECUTIONS OF THE FRAUDULENT SCHEME

    25.    On or about the dates set forth below, within the Central District of California and elsewhere, defendants FADOJUTIMI, FATUNMBI, and VELAZQUEZ, together with others known and unknown to the Grand Jury, for the purpose of executing and attempting to execute the fraudulent scheme described above, knowingly and willfully caused to be submitted to Medicare for payment the following false and fraudulent claims purportedly for PWCs and related accessories:

| COUNT | BENE-FICIARY | CLAIM NUMBER | DATE BILLED TO MEDICARE | AMOUNT BILLED TO MEDICARE |
|-------|-------------|--------------|-------------------------|---------------------------|
| TWO | F.V. | 8163820619000 | 06/11/08 | $5,500 |
| THREE | H.C. | 8163820615000 | 06/11/08 | $5,500 |
| FOUR | R.F. | 8288850788000 | 10/14/08 | $4,500 |
| FIVE | J.J. | 9128833685000 | 05/08/09 | $4,500 |
| SIX | R.M. | 9168845974000 | 06/17/09 | $4,500 |
| SEVEN | S.G. | 9253840816000 | 09/10/09 | $4,500 |
| EIGHT | M.B. | 10019842869000 | 01/19/10 | $4,500 |

COUNT NINE

[DEFENDANTS FADOJUTIMI AND FATUNMBI]

[18 U.S.C. § 1956(h)]

A.   INTRODUCTORY ALLEGATIONS

26.   The Grand Jury incorporates by reference and re-alleges paragraphs 1 through 19 and paragraph 21(a) through (i) of this Indictment as though set forth in their entirety here.

27.   In or around 2003, defendant FADOJUTIMI opened a corporate bank account for Lutemi at Wells Fargo Bank, account number xxxxxx1313.  Until in or around January 2008, when she closed the account, defendant FADOJUTIMI maintained sole signature authority for this account.

28.   On or about July 5, 2007, defendant FADOJUTIMI opened a second corporate bank account for Lutemi at Wells Fargo Bank, account number xxxxxx9490.  Defendant FADOJUTIMI maintained sole signature authority for this account.

B.   THE OBJECTS OF THE CONSPIRACY

29.   Beginning in or about August 2006 and continuing to in or about March 2010, in the Central District of California and elsewhere, defendants FADOJUTIMI and FATUNMBI, along with others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally commit the following offenses against the United States:

(1)   Knowing that property involved in a financial transaction represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of specified unlawful activity, that is, conspiracy to commit health care fraud and health care fraud, in violation of Title 18,

11

1  United States Code, Sections 1349 and 1347, conducted and

2  attempted to conduct financial transactions with the intent to

3  promote the carrying on of said specified unlawful activity, in

4  violation of Title 18, United States Code, Section

5  1956(a)(1)(A)(i); and

6       (2)   Knowing that the property involved in a financial

7  transaction represented the proceeds of some form of unlawful

8  activity, and which property was, in fact, the proceeds of

9  specified unlawful activity, that is, conspiracy to commit health

10 care fraud and health care fraud, in violation of Title 18,

11 United States Code, Sections 1349 and 1347, conducted and

12 attempted to conduct financial transactions with the intent to

13 conceal or disguise the nature, location, source, ownership, and

14 control of the proceeds of said specified unlawful activity, in

15 violation of Title 18, United States Code, Section

16 1956(a)(1)(B)(i).

17 C.  THE MANNER AND MEANS OF THE CONSPIRACY

18      30.   The object of the conspiracy was carried out, and to be

19 carried out, in substance, as follows:

20      a.   Defendant FADOJUTIMI would execute and submit

21 electronic funds transfer agreements to Medicare, requesting that

22 all reimbursements from Medicare be directly deposited into

23 Lutemi's Wells Fargo Bank corporate accounts, account numbers

24 xxxxxx1313 and xxxxxx9490.

25      b.   Defendant FADOJUTIMI would cause the proceeds of

26 the health care fraud conspiracy and scheme to be deposited into

27 Lutemi's corporate bank accounts.

28      c.   Defendants FADOJUTIMI and FATUNMBI would write

12

1  checks, and cause checks to be written, to Lutemi employees; to

2  family, friends, and co-workers of defendant FADOJUTIMI; and to

3  others known and unknown to the Grand Jury.

4          d.    These individuals would then cash the checks and

5  return all or almost all of the funds to defendants FADOJUTIMI

6  and FATUNMBI.  At times, these individuals would retain a portion

7  of the funds for themselves.

8          e.    Defendants FADOJUTIMI and FATUNMBI, and others

9  known and unknown to the Grand Jury, would then used the cash to

10  pay various individuals, including but not limited to marketers,

11  CC1, and other individuals who provided defendants FADOJUTIMI and

12  FATUNMBI with the false and fraudulent prescriptions and

13  documents that they used to submit their false and fraudulent

14  claims to Medicare.

15          f.    In addition, defendant FADOJUTIMI,

16  together with others known and unknown to the Grand Jury, would

17  transmit, and cause to be transmitted, funds from the Lutemi bank

18  accounts, to the corporate bank account for Fatumbe Inc.

19  ("Fatumbe"), a corporation owned and operated by defendant

20  FADOJUTIMI, Wells Fargo Bank account number xxxxx8310, on which

21  defendant FADOJUTIMI was a signatory.  Defendant FADOJUTIMI would

22  transmit and cause the transmission of funds from the Lutemi bank

23  accounts to the Fatumbe bank account to conceal and disguise the

24  true nature, ownership, and control of the proceeds of the health

25  care fraud, by, among other means, making it appear as if Lutemi

26  had incurred legitimate business expenses, when, in fact, the

27  //

28  //

13

1  money was being paid to defendant FADOJUTIMI and converted to

2  cash.

3                                            A TRUE BILL

4                                      ___/S/_____

5                                      Foreperson

6

7  ANDRÉ BIROTTE JR.
   United States Attorney

8

9  ROBERT E. DUGDALE
   Assistant United States Attorney
10 Chief, Criminal Division

11 RICHARD E. ROBINSON
   Assistant United States Attorney
12 Chief, Major Frauds Section

13 CONSUELO WOODHEAD
   Assistant United States Attorney
14 Assistant Chief, Major Frauds Section

15 CHARLES LABELLA
   Deputy Chief, Fraud Section
16 United States Department of Justice

17 JONATHAN BAUM
   Trial Attorney, Fraud Section
18 United States Department of Justice

19 FRED MEDICK
   Trial Attorney, Fraud Section
20 United States Department of Justice

21

22

23

24

25

26

27

28

                              14