## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CRIMINAL MINUTES – GENERAL    'O'

| Case No. | 2:13-CR-00324-CAS - 2 | Date | February 28, 2019 |
|---|---|---|---|

| Present: The Honorable | CHRISTINA A. SNYDER |
|---|---|
| Interpreter | N/A |

| Catherine Jeang | Not Present | Claire Yan, Not Present |
|---|---|---|
| | | Emily Culbertson, Not Present |
| | | Justin Givens, Not Present |
| *Deputy Clerk* | *Court Reporter / Recorder, Tape No.* | *Assistant U.S. Attorneys* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| AYODEJI TEMITAYO FATUNMBI | NOT | X | | JOHN MCNICHOLAS | NOT | X | |

**Proceedings:**     (IN CHAMBERS) - DEFENDANT AYODEJI TEMITAYO FATUNMBI'S MOTION TO DISMISS INDICTMENT (Dkt. 104, filed Oct. 25, 2018)


## I.  INTRODUCTION

Defendant Ayodeji Temitayo Fatunmbi and his alleged co-conspirators, Olufunke Ibiyemi Fadojutimi ("Fadojutimi") and Maritza Elizabeth Velazquez ("Velazquez"), were indicted on May 9, 2013.  Dkt. 1.  The indictment charged all defendants with one count of conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349, and seven counts of health care fraud in violation of 18 U.S.C. § 1347, and charged defendant and Fadojutimi with one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h).  Id. The indictment alleges that defendant and Fadojutimi ran a business known as Lutemi Medical Supplies ("Lutemi"), and participated in a scheme to submit false and fraudulent claims to Medicare for power wheelchairs and other durable medical equipment.  Id. ¶¶ 20–21.  The money obtained through this scheme was allegedly laundered to conceal the criminal activity. Id. ¶ 30.

Velasquez pleaded guilty to one count of conspiracy to commit health care fraud in July 2013.  Dkt. 38.  Fadojutimi was found guilty on all counts following a jury trial in July 2014. Dkt. 117.  Defendant had been living in Nigeria since 2010 and was ultimately extradited and returned to the Central District of California on October 27, 2018.  Dkt. 194-1, Declaration of Jeffrey M. Olson ("Olson Decl.") ¶ 29.  He was arraigned two days later.  Dkt. 189.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL          'O'**

On January 2, 2019, defendant filed the instant motion to dismiss the indictment based on alleged violations of his Sixth Amendment right to a speedy trial and his Fifth Amendment due process rights. Dkt. 192 ("Mot."). Defendant contends that the government was negligent in failing to arrest him until five years after the indictment, and up to fifteen years after the earliest alleged conduct charged in the indictment, and that he has suffered prejudice as a result of the government's delay. Id. at 2. The government filed an opposition on February 4, 2019. Dkt. 194 ("Opp'n"). Defendant filed a reply on February 11, 2019. Dkt. 194 ("Reply"). Defendant's trial is scheduled for May 14, 2019. Dkt. 191.

The Court held a hearing on February 25, 2019. At the hearing, defendant submitted three additional exhibits: (1) a copy of an expired Nigerian passport that was issued to Fatunmbi in his name at the Nigeria consulate in Atlanta, Georgia in 2010, and a Nigerian passport that was also issued to Fatunmbi in his name 2015 in Nigeria; (2) records from the Federal High Court of Nigeria relating to defendant's extradition; and (3) a newspaper article concerning the government's efforts to extradite the defendant in United States v. Manning, 56 F.3d 1188 (9th Cir. 1995). See Dkt. 197.

After carefully considering the parties' arguments, the Court finds and concludes as follows.

## II.  BACKGROUND

The FBI began to investigate defendant's alleged criminal activity in 2006. Dkt. 192-4. Defendant claims that he voluntarily returned to Nigeria in 2010 due to his illegal status in the United States. Mot. at 4. In 2012, defendant received a phone call from Fadojutimi informing him that she was subpoenaed to testify before a grand jury regarding Lutemi. Id. And in May 2013, defendant received a telephone call from his children reporting that he and Fadojutimi were indicted in this case. Id.

An arrest warrant for Fatunmbi was issued the same day as the indictment. Dkt. 170. On or about September 4, 2013, the Fraud Section of the Department of Justice's Criminal Division ("Fraud Section") contacted the Office of International Affairs ("OIA") in the Department of Justice requesting assistance with preparing an affidavit to support a request for Fatunmbi's extradition from Nigeria. Olson Decl. ¶ 20. The Fraud Section and OIA subsequently worked together to prepare the extradition request. Id. Meanwhile, an Internal Revenue Service Criminal Investigation Special Agent worked with the Department of Homeland Security Investigations ("DHS-HSI") to locate Fatunmbi in Nigeria. Dkt. 194-2, Declaration of Lizandro Lopez ("Lopez Decl.") ¶ 5. An Interpol Red Notice application was filed by U.S. authorities for Fatunmbi on or about September 4, 2013. Id. ¶ 3. In June 2014, DHS-HSI agents met with Interpol representatives in Nigeria to coordinate efforts to locate Fatunmbi. Id. ¶ 6. On August 27, 2014, DHS-HSI agents were advised that Interpol was continuing their

efforts to locate Fatunmbi but had not been successful to date. Id. In September 2014, while Fatunmbi's whereabouts remained unknown, DHS-HSI agents were forced to leave Nigeria due to safety concerns and an outbreak of Ebola. Id. ¶ 9.

Although the United States and Nigeria are parties to a bilateral extradition treaty, OIA experienced general difficulties in obtaining extraditions from Nigeria between 2013 and 2017. Opp'n at 4. During that time period, despite having made multiple extradition requests, the United States had only obtained one successful extradition from Nigeria, and that was of a defendant who was charged with providing material support to al Qaeda. Id. OIA's associate director traveled to Nigeria in 2016 to meet with his Nigerian counterparts to improve the relationship but was not successful. Olson Decl. ¶ 15.

According to the government, starting in 2017, new personnel began working at the Nigerian Ministry of Justice who were more cooperative and communicative, and as a result, the United States-Nigerian extradition relationship improved. Id. ¶ 17. Around this time, the FBI also began to improve its working relationship with the Nigerian Economic Financial Crimes Commission ("EFCC"). Dkt. 194-4, Declaration of Jill Mansfield ("Mansfield Decl.") ¶ 9. It was the EFCC that ultimately located and arrested defendant in April 2018. Id. ¶ 10. Thereafter, the Fraud Section and OIA made final revisions and delivered the extradition package for the extradition of Fatunmbi to Nigerian authorities on June 3, 2018. Olson Decl. ¶ 27.

Nigerian authorities then instituted proceedings in connection with the extradition request, and a Nigerian Court found Fatunmbi extraditable on October 8, 2018. Id. ¶ 29. OIA then coordinated Fatunmbi's surrender to the United States and Fatunmbi was returned to the Central District of California on October 27, 2018, where he was arraigned two days later. Id.; Dkt. 189.


## III.  DISCUSSION

### A.  Sixth Amendment Right to a Speedy Trial

The Sixth Amendment to the U.S. Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." The Sixth Amendment right to a speedy trial does not attach until the defendant has been arrested or indicted. United States v. MacDonald, 456 U.S. 1, 7 (1981). The Court applies a four-factor balancing test, set forth in Barker v. Wingo, 407 U.S. 514 (1972), to determine whether a defendant's speedy trial rights have been violated. These factors are: "[1] whether delay before trial was uncommonly long, [2] whether the government or the criminal defendant is more to blame for that delay, [3] whether, in due course, the defendant asserted his right to a speedy

## CRIMINAL MINUTES – GENERAL     'O'

trial, and [4] whether he suffered prejudice as the delay's result." <u>Doggett v. United States</u>, 505 U.S. 647, 651 (1992).[1]

### i.    Length of Delay

The length of delay is the "triggering mechanism" for engaging in the remainder of speedy trial right inquiry. <u>Barker</u>, 407 U.S. at 530. As a preliminary matter, the Court addresses defendant's contention that the length of delay should be measured from the date of the criminal acts alleged in the indictment. <u>See</u> Mot. at 7. It is well-settled law that the Sixth Amendment right to a speedy trial "has no application until the putative defendant in some way becomes an 'accused'" through some charge or arrest. <u>United States v. Marion</u>, 404 U.S. 307, 313–319 (1971). <u>See also</u> <u>United States v. Lovasco</u>, 431 U.S. 783, 788–789 (1977); <u>United States v. Loud Hawk</u>, 474 U.S. 302, 310 (1986). Thus, the Court finds that defendant's Sixth Amendment right to a speedy trial did not attach until he was indicted in May 2013.

Courts have routinely found delays of more than one year to be "presumptively prejudicial." <u>See</u> <u>Doggett</u>, 505 U.S. at 652, n.1. The government also concedes that the approximate five-year period between the indictment and finalized extradition request is sufficient to trigger the Court's inquiry into the remaining three <u>Barker</u> factors. Opp'n at 12. Accordingly, the Court will inquire into the remaining three factors.

### ii.    Reason for the Delay

The next criterion considers whether the government or the defendant is to blame for the delay. The government has "some obligation" to pursue a defendant in order to bring him to trial. <u>United States v. Mendoza</u>, 530 F.3d 758, 762–63 (9th Cir. 2008) (quoting <u>United States v.</u>

---

[1]     The government contends that the Court need not engage in the <u>Barker</u> analysis because defendant waived his right to a speedy trial by intentionally causing the post-indictment delay. The government relies on <u>Manning</u>, wherein the Ninth Circuit held that the defendant, who was living in Israel at the time of his indictment, had intentionally relinquished his right to a speedy resistance due to his "affirmative resistance of the government's efforts to secure his presence in the United States." 56 F.3d at 1195. At the hearing, defense counsel argued that, unlike the defendant in <u>Manning</u> who was a United States citizen and could have voluntarily returned to the United States after learning of his indictment, defendant is neither a resident nor a citizen of the United States and therefore could not have voluntarily returned to the United States. Defense counsel also argued that defendant did not intentionally cause the delay because he made no attempt to hide his identity in Nigeria. The Court need not resolve the issue of whether defendant affirmatively resisted the government's efforts to secure his presence in the United States because it finds that, under the <u>Barker</u> factors, the government did not violate defendant's right to a speedy trial.

Sandoval, 990 F.2d 481, 485 (9th Cir. 1993)). However, "[t]here is no requirement that law enforcement officials make heroic efforts to apprehend a defendant who is purposefully avoiding apprehension." Sandoval, 990 F.3d at 485 (internal quotation marks and citation omitted).

Defendant asserts that the government was solely at fault for the post-indictment delay and claims that "there is no evidence that the government, including the FBI, made any effort to locate and arrest [him]." Mot. at 8. But the record does not support this claim. Rather, an Interpol Red Notice application was filed by U.S. authorities for Fatunmbi in early September 4, 2013, just months after his indictment, and the record demonstrates that the government worked diligently to coordinate with several American and Nigerian agencies, as well as Interpol, to locate defendant in Nigeria. When Nigerian authorities finally located and arrested defendant in April 2018, the government completed and delivered the extradition package to Nigerian authorities within two months.

Defendant, on the other hand, was aware of the indictment against him in May 2013, but nonetheless remained in Nigeria and never informed the United States government of his whereabouts. And once he was finally arrested, defendant acknowledges that he fought his extradition. Reply at 7. This fact supports a finding that defendant acquiesced in the post-indictment delay. In Manning, the defendant "knew of the indictment against him and . . . resisted all efforts to bring him to the United States," and the Ninth Circuit determined that these facts were "sufficient to support the finding that [the defendant] waived his speedy trial rights." 56 F. 3d. at 1195 (internal quotation marks and citations omitted). The Ninth Circuit remarked that a defendant "cannot avoid a speedy trial by forcing the government to run the gauntlet of obtaining formal extradition and then complain about the delay that he has caused by refusing to return voluntarily to the United States." Id. Although the record does not demonstrate that defendant actively evaded detection, he nonetheless acquiesced in the delay caused by the inability of multiple agencies to locate him. Thus, the Court finds that any post-indictment delay is attributable to defendant's failure to make his whereabouts in Nigeria known to authorities, rather than any negligence on behalf of the government.

The defendant resists this conclusion and argues that, because he had once been deported from the United States in 2001, he had "no legal claim to travel to the United States." Reply at 3. This argument is unpersuasive because, even if he could not travel to the United States, defendant could have made himself known to United States authorities upon learning of his indictment instead of waiting to be arrested. The defendant further argues that the government was not diligent in its efforts because his whereabouts in Nigeria were obvious, and because the government failed to demonstrate that it made any additional efforts to locate him between 2014 and 2017. Reply at 3, 5–7. The government argues that it "went to great lengths to work with multiple American and Nigerian agencies, as well as with Interpol, to locate the defendant" and provides evidence to support this assertion. See Opp'n at 12.

**CRIMINAL MINUTES – GENERAL**     **'O'**

By securing Interpol's assistance, the government has sufficiently demonstrated that its efforts to locate defendant were at least diligent. Moreover, it appears that the United States government had intended to contribute to on-the-ground efforts to locate defendant but were forced to leave the country due to safety concerns and an Ebola outbreak in 2014. Opp'n at 6. Thus, the government's lack of direct involvement in locating defendant after 2014 can be explained by intervening circumstances rather than a lack of diligence. Further, the government has also demonstrated that even if it had located defendant earlier, its extradition efforts would have been futile because the Nigerian government was not responding to its extradition requests during that time. Opp'n at 4–5. This showing also supports a finding that the delay was not attributable to the government. See United States v. Corona-Verbera, 509 F.3d 1105, 1115–16 (9th Cir. 2007) (holding that government was not negligent when extradition would have been futile).

Finally, even if defendant's whereabouts in Nigeria were obvious and the government was therefore at some fault for failing to locate him, this failure was, at best, due to mere negligence rather than a "purposeful attempt to delay the trial to prejudice the defendant or gain a tactical advantage for itself." Barker, 407 U.S. at 531. A "more neutral reason, such as negligence, does not necessarily tip the scale in favor of defendant, particularly where the defendant was at liberty and outside the jurisdiction where the indictment was returned." United States v. Bagga, 782 F.2d 1541 (11th Cir. 1986) (citing United States v. Walters, 591 F.2d 1195, 1201 (5th Cir. 1979)).

Accordingly, this factor weighs against the defendant.

### iii. Assertion of Right to Speedy Trial

"The Speedy Trial Clause primarily protects those who assert their rights, not those who acquiesce in the delay—perhaps hoping that the government will change its mind or lose critical evidence." United States v. Aguirre, 994 F.2d 1454, 1457 (9th Cir. 1993); see also Doggett, 505 U.S. at 653 (noting that a defendant's knowledge of the charges against him "further undermines [a] speedy trial claim"). Thus, where a defendant knows of his indictment or the charges against him "years before he was arrested," this third factor weighs "heavily" against the defendant. Doggett, 505 U.S. at 653. By contrast, where a defendant is not aware of the charges against him, he "is not to be taxed for invoking his speedy trial right only after his arrest." Id. at 647. When the defendant is unaware of the charges against him prior to his arrest, but stipulates to continuances thereafter, this factor remains neutral. Mendoza, 530 F.3d at 764.

Defendant himself admits that his children called him shortly after the indictment to inform him that he had been indicted in this case. Mot. at 4. Defendant thus knew of the charges against him for most, if not all, of the duration of the post-indictment delay, yet waited until he was extradited to the United States to assert his right to a speedy trial. Defendant even

admits that he fought his extradition, see Reply at 7, which is further evidence that he acquiesced in the delay instead of asserting his right to a speedy trial.

Thus, this factor weighs heavily against the defendant.

### iv.    Prejudice to Defendant

Defendant asserts that any delay of more than one year is "presumptively prejudicial," Opp'n at 7 (citing Doggett v. United States, 505 U.S. 647, 652 (1992)), and fails to provide any analysis as to why the post-indictment delay in this case has caused him actual prejudice. However, "Doggett holds that we should presume prejudice only if the defendant isn't responsible for the delay." Aguirre, 994 F.2d at 1457–58.  When the defendant has acquiesced in delay, the defendant bears a heavy burden to prove actual prejudice.  See id. at 1457.

As explained earlier, the Court finds that defendant acquiesced in the delay by failing to assert his right to a speedy trial after learning of his indictment.  In light of this finding, defendant bears the heavy burden of demonstrating actual prejudice, yet fails to make any allegations or to provide any specific reasons of why the post-indictment delay has resulted in any prejudice.  In his reply, defendant makes the conclusory assertion that he has suffered "actual prejudice due to the age of the case, and because witnesses['] memories have faded since 2003."  Reply at 2.  Defendant provides no specific examples of actual prejudice.  Thus, the Court finds that this factor weighs in favor of the government.

In summary, the Court concludes that each Barker factor weighs in the government's favor.  Accordingly, the Court **DENIES** defendant's motion to dismiss the indictment on Sixth Amendment grounds.

### B.    Fifth Amendment Right to Due Process

To establish a due process violation during the pre-indictment period, a defendant must: (1) "prove actual, non-speculative prejudice from the delay"; and (2) demonstrate that "the length of the delay when balanced against the reason for the delay" offends "fundamental conceptions of justice."  United States v. Huntley, 976 F.2d 1287, 1290 (9th Cir. 1992). Defendant summarily moves the Court to dismiss the indictment on Fifth Amendment grounds "for the unreasonable delay in commencing the investigation until [his] actual arrest on April 11, 2018, which totaled a span of 13 years."  Mot. at 13.  However, as explained earlier, defendant has failed to make any showing of "actual, non-speculative prejudice from the delay." See id.  Further, even if defendant had made a showing of actual prejudice, the Court finds that the length of delay, when balanced against the reason for the delay—namely, defendant's voluntary decision to move back to Nigeria in 2010 and his failure to assert his right to a speedy trial after learning of his indictment—does not offend fundamental conceptions of justice.

**CRIMINAL MINUTES – GENERAL**     **'O'**

Accordingly, the Court **DENIES** defendant's motion to dismiss the indictment on Fifth Amendment grounds.

## IV. CONCLUSION

In accordance with the foregoing, defendant's motion to dismiss the indictment is hereby **DENIED**.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Deputy Clerk | | CMJ | |